UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CEDRIC CARTER,

    Plaintiff,        Hon. Janet T. Neff

v.              Case No. 1:21-cv-263

RIVERSHELL APARTMENTS, LLC, et. al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

  This matter is before the Court on Defendants' Motions for Summary Judgment. (ECF No. 93, 94).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be granted and this action terminated.

## BACKGROUND

  Plaintiff initiated this action on March 22, 2021, against Connie Roberts and Rivershell Apartments, LLC.   (ECF No. 1).   On December 15, 2021, Plaintiff amended his complaint to add three additional defendants: (1) AndMark Investment Fund IV, LLC; (2) AndMark Rivershell Apartments, LLC; and (3) Beztak Management Company. (ECF No. 44).   In his amended complaint, Plaintiff alleges the following.

  Plaintiff suffers from numerous "serious health conditions" and "disabilities," which "render him wheelchair bound."   He receives Section 8 housing subsidies, as well as Medicaid and Supplemental Security Income benefits.   On or about January 25,

2019, Plaintiff signed a lease to reside at Rivershell Apartments.   Prior to executing this lease, Plaintiff informed "Defendants" that he required a "wheelchair accessible ramp to be able to access his rental unit."   Plaintiff also disclosed that he required the assistance of "support animals."

Plaintiff took possession of his apartment in February 2019.   Defendants thereafter failed to install a wheelchair accessible ramp.   Habitat for Humanity later agreed to install a ramp provided Rivershell provide "proof of insurance."   Rivershell refused, however, to provide this information.

To enter his apartment, Plaintiff must maneuver his wheelchair "hundreds of feet on unpaved common areas, hoist himself from his wheelchair and drag himself (or be carried) to and through his patio sliding glass door."   Plaintiff was forced to leave his motorized wheelchair outdoors where it was damaged.   Plaintiff is unable to retrieve his mail and is "essentially a prisoner in his apartment."

On May 31, 2019, Plaintiff filed a complaint with the Michigan Department of Civil Rights alleging "disability discrimination."   After filing this complaint, "Defendants" retaliated against Plaintiff by "threatening to evict" him, ignoring Plaintiff's complaints regarding "neighbor misbehavior," selectively applying Rivershell's rules against him, and informing another resident that Plaintiff had submitted a noise complaint against him.   The resident against whom Plaintiff made the noise complaint later "physically attacked" Plaintiff.

Plaintiff alleges that Defendants discriminated and retaliated against him and, moreover, failed to provide reasonable accommodation in violation of the Fair Housing Act, Rehabilitation Act, and the Michigan Persons with Disabilities Civil Rights Act. Plaintiff seeks declaratory, injunctive, and monetary relief.  Defendants now move for summary judgment.  Plaintiff has responded to these motions.[1]  The Court finds that oral argument is unnecessary.  *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."  *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."  *Amini v. Oberlin College*, 440 F.3d 350,

---

[1] While Plaintiff has responded to Defendants' motions to dismiss, the Court notes that Plaintiff, in his responses, has submitted no evidence and, with one exception, does not even cite to evidence in support of his contention that "disputes of fact" exist that preclude granting Defendants' motions.

357 (6th Cir. 2006).   The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient.   *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts."   *Amini*, 440 F.3d at 357.   The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."   *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).   Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."   *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Daniels*, 396 F.3d at 735.   Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law."   *Harden*, 2021 WL 1257802 at *4.

-4-

## ANALYSIS

**I.     Rehabilitation Act   (Counts I and II)**

The Rehabilitation Act seeks to "combat discrimination against disabled individuals." *M.J. by and through S.J. v. Akron City School District Board of Education*, 1 F.4th 436, 452 (6th Cir. 2021).  Specifically, the Rehabilitation Act provides that "a qualified individual with a disability shall not, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity *receiving Federal financial assistance*."  *Ibid.* quoting 29 U.S.C. § 794(a) (emphasis added).

Accordingly, one of the elements Plaintiff must establish to prevail on his Rehabilitation Act claims is that Defendants were receiving federal financial assistance. *See Doe v. Salvation Army*, 531 F.3d 355, 358 (6th Cir. 2008).  Moreover, the fact that Plaintiff's rent is paid using Section 8 subsidies or vouchers does *not* make any of the present Defendants recipients of federal funds.  *See, e.g., Reyes v. Fairfield Properties*, 661 F.Supp.2d 249, 263-64 (E.D.N.Y. 2009) (under the Rehabilitation Act, "an entity or person who receives housing assistance payments under a housing assistance payments program or a voucher program is not a 'recipient' of federal financial assistance") (quoting 24 C.F.R. § 8.3).

Defendants have submitted evidence that the Rivershell Apartments are owned by AndMarkRivershell Apartments, LLC, which "does not receive federal funding as that

term is defined by the Rehabilitation Act of 1973." (ECF No. 95-2 , PageID.622).  In response, Plaintiff advances two arguments, neither of which are persuasive.

Plaintiff first asserts that, *if* Defendants received Covid Emergency Relief Assistance, such would make them recipients of federal funds.  Plaintiff has failed to identify any authority that supports this argument.  Even if such authority existed, Plaintiff has presented no evidence that any Defendant received Covid Emergency Relief Assistance.  This argument is, therefore, rejected.

Plaintiff next argues that "Defendants' use of Habitat for Humanity for the building of ramps on their property" constitutes the receipt by Defendants of federal funds.  In support of this argument, Plaintiff cites to 24 C.F.R. § 8.3, which provides, in part, that an entity "to which Federal financial assistance is extended for any program or activity directly or through another recipient" is considered, for purposes of the Rehabilitation Act, a recipient of federal funds.

Plaintiff interprets this language as standing for the proposition that if an entity employs a recipient of federal funds to perform a discreet task such transforms the employing entity into a recipient of federal funds.  Plaintiff has identified no authority supporting this interpretation.  Regardless, Plaintiff has presented no evidence that Habitat for Humanity is a recipient of federal funds or that federal funds were utilized to perform any work for Defendants.  Accordingly, this argument is likewise rejected. In sum, and for the reasons articulated above, the undersigned finds that all Defendants are entitled to summary judgment as to Plaintiff's Rehabilitation Act claims.

## II.     Fair Housing Amendments Act     (Counts I & II)

Plaintiff asserts three claims under the Fair Housing Amendments Act (FHAA), discrimination, retaliation, and failure to provide reasonable accommodation, each of which is analyzed below.

### A.     Count I

In Count I of his amended complaint, Plaintiff alleges that Defendants engaged in discrimination and retaliation in violation of the FHAA.   Specifically, Plaintiff alleges that Defendants' conduct violated four separate statutory provisions: (1) 42 U.S.C. § 3604(c); (2) 42 U.S.C. § 3604(d); (3) 42 U.S.C. § 3604(f)(1); and (4) 42 U.S.C. § 3604(f)(2). But, rather than identify the specific conduct which allegedly violated his rights, Plaintiff merely asserts that "Defendants discriminated against and retaliated against [him] in the ways set forth above."

The Court interprets this vague statement as asserting the following claims: (1) Defendants discriminated against Plaintiff by refusing to allow him to install, at his expense, a ramp and by refusing to make the modifications necessary to enable Plaintiff to access his mailbox; and (2) Defendants retaliated against him by threatening eviction, ignoring his complaints about his neighbors, selectively enforcing Rivershell's rules, and informing a resident that Plaintiff filed a noise complaint against him.

1.      42 U.S.C. § 3604(c)

This provision makes it unlawful to:

> make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c).

Plaintiff has advanced no argument that Defendants violated this provision. More importantly, Plaintiff has presented no evidence that would entitle him to relief under this provision.  Accordingly, to the extent Plaintiff seeks relief under this provision, the undersigned recommends that Defendants' motions for summary judgment be granted.

2.      42 U.S.C. § 3604(d)

This provision makes it unlawful to:

> Represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

42 U.S.C. § 3604(d).

Plaintiff has advanced no argument that Defendants violated this provision. Moreover, Plaintiff has presented no evidence that would entitle him to relief under this

provision.  Accordingly, to the extent Plaintiff seeks relief under this provision, the undersigned recommends that Defendants' motions for summary judgment be granted.

       3.      42 U.S.C. § 3604(f)(1)

This provision makes it unlawful to:

> discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of
>
> (A)    that buyer or renter,
>
> (B)    a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available, or
>
> (C)    any person associated with that buyer or renter.

42 U.S.C. § 3604(f)(1).

As the quoted language indicates, this provision applies where an individual was denied particular housing.  *See, e.g., Hamous v. Kestell*, 2017 WL 4182810 at *2 (D. Montana, Sept. 21, 2017).   Plaintiff does not allege that Defendants denied him housing. To the contrary, Plaintiff's claims are premised on Defendants' alleged failures after renting him an apartment.   Accordingly, to the extent Plaintiff seeks relief under this provision, the undersigned recommends that Defendants' motions for summary judgment be granted.

4.      42 U.S.C. § 3604(f)(2)

This provision makes it unlawful to:

> discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of
>
> (A)      that person,
>
> (B)      a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available, or
>
> (C)      any person associated with that person.

42 U.S.C. § 3604(f)(2).

For purposes of this provision, "discrimination" includes (1) a refusal to permit a handicapped person to make, at their expense, reasonable modifications necessary to allow that person full enjoyment of the premises, and (2) a refusal to makes reasonable accommodations in rules, policies, practices, or services, when such are necessary to allow that person full enjoyment of the premises.   42 U.S.C. § 3604(f)(3)(A)-(B).

In attempting to establish unlawful discrimination, Plaintiff can rely on any of several legal theories: (1) disparate treatment; (2) disparate impact; (3) failure to make a reasonable accommodation; or (4) failure to permit a reasonable modification.   *See Hollis v. Chestnut Bend Homeowners Association*, 760 F.3d 531, 537-038 (6th Cir. 2014). It is important to properly determine which theories Plaintiff is pursing as the elements of each differ.   *See Id.* at 538-41 (discussing that while the *McDonnell Douglas* burden-shifting test applies to claims of disparate impact and disparate treatment, it has no

application to claims of failure to make reasonable accommodation or allow reasonable modification).

Regarding the wheelchair ramp, Plaintiff is asserting a claim that Defendants failed to permit a reasonable modification, specifically that Defendants failed to allow a ramp to be installed at Plaintiff's expense.   To prevail on a reasonable modification claim, Plaintiff must establish the following elements: (1) he had a disability; (2) Defendants knew or should have known that Plaintiff had a disability; (3) Plaintiff requested a modification; (4) Defendants refused to allow the requested modification; and (5) the requested modification was reasonable and necessary.   *See, e.g., Kooman v. Boulder Bluff Condominiums*, 833 Fed. Appx. 623, 626 (6th Cir., Nov. 5, 2020). Defendants are not required to pay for or otherwise facilitate an allegedly reasonable modification.   Rather, Defendants are merely prohibited from refusing Plaintiff's request to make reasonable modifications at his own expense.   *Ibid.*

Plaintiff further alleges that Defendants failed to make a reasonable accommodation to permit him to access his mailbox.   To prevail on such a claim, Plaintiff must establish the following elements: (1) he has a disability; (2) Defendants knew or should have known that Plaintiff had a disability; (3) the requested accommodation was reasonable and necessary; and (4) Defendants refused to make the accommodation.   *See, e.g., Mercer v. Edward Rose & Sons, Inc.*, 2023 WL 2789621 at *4 (E.D. Mich., Apr. 5, 2023).

a.    Wheelchair Ramp

In November 2018, Plaintiff's then-girlfriend, Amethyst Williams, applied to lease an apartment at Rivershell Apartments.  (ECF No. 93-5, PageID.482-84).  Williams indicated that Plaintiff would also reside with her.  (*Id.*, PageID.482).  Williams' application was subsequently approved for an apartment Plaintiff knew was not wheelchair accessible.  (ECF No. 93-2, PageID.461-62).  When Plaintiff requested that a wheelchair ramp be installed, Defendant Roberts responded that a ramp could not be installed in the middle of winter.  (*Id.*).  Plaintiff and Williams moved into their apartment on January 25, 2019.  (ECF No. 93-2, PageID.463).

On April 16, 2019, Plaintiff emailed Defendant Roberts with three requests: (1) "the entry way and door into my apartment building be made handicapped wheelchair accessible";[2] (2) "the mailbox platform and or median [where] my mailbox is located be made wheelchair handicapped accessible"; and (3) "the entry way and door into [the] management office building be made handicapped wheelchair accessible.[3] (ECF No. 93-12, PageID.512).

Plaintiff understood that Defendants were not obligated to construct or pay for a wheelchair ramp into his residence.  (ECF No. 93-2, PageID.468, 470).  Accordingly,

---

[2] Defendants interpreted this statement as a request for a wheelchair ramp.  Plaintiff has not disputed this interpretation.

[3] A wheelchair ramp into this building was installed later that year.  (ECF No. 95-15, PageID.699-700).

Plaintiff contacted Habitat for Humanity (Habitat) to assess whether they could assist with installing a wheelchair ramp.[4] (*Id.*, PageID.468). Plaintiff's contact person at Habitat was a person named Jordan. (*Id.*). Habitat agreed to assist Plaintiff but first required "the insurance information" for the apartment complex. (*Id.*).

Plaintiff has presented no evidence establishing the date on which Habitat requested information from Defendants concerning its insurance. Defendants, however, have presented evidence that they provided the requested insurance information to Habitat. On October 15, 2019, Laura Gillespie, the Regional Manager for Beztak Properties, contacted Ashley Link, the Asset Manager for AndMark Management Company, requesting "a copy of Rivershell's liability insurance." (ECF No. 93-13, PageID.516). The requested insurance information was provided to Gillespie who forwarded it to Defendant Roberts. (*Id.*, PageID.514-16). Defendant Roberts forwarded the insurance information to Jordan at Habitat on October 21, 2019. (*Id.*, PageID.514). In her communication to Jordan, Defendant Roberts expressly stated, "let me know if you need anything more." (*Id.*). Plaintiff has presented no evidence that the information Roberts provided was incomplete or insufficient or that Habitat required any additional information from Defendants to proceed with the project.

On June 18, 2020, a representative with Habitat contacted Defendant Roberts to ask whether she "had any luck gathering the updated insurance documentation." (ECF No. 93-17, PageID.532-33). The record is devoid of evidence indicating what prompted

---

[4] The record does not indicate precisely when Plaintiff contacted Habitat for Humanity.

this particular inquiry.    On June 22, 2020, the Habitat representative informed Defendant Roberts that he had received "the insurance document [he] needed."    (*Id.*, PageID.532).

A wheelchair ramp to Plaintiff's residence was eventually installed in September 2022.    (*Id.*, PageID.468).    Plaintiff's reasonable modification claim is premised on the fact that it took more than three years from the time he requested a wheelchair ramp until a ramp was actually installed.    Plaintiff's claim fails, however, because he has failed to present any evidence that Defendants denied his request for a wheelchair ramp or that the delay in this matter was in any way attributable to Defendants.

The meager evidence presented on this issue reveals that, when Habitat requested insurance information from Defendants, it was provided.    There is no evidence that the information provided by Defendants to Habitat was incomplete or insufficient.    There is likewise no evidence that Defendants in any way impeded Habitat, or any other individual or entity, from installing the wheelchair ramp Plaintiff requested.    To the contrary, the record shows that in the summer of 2020, Plaintiff refused an offer by Defendants to install a wheelchair ramp for Plaintiff at no cost to Plaintiff.    (ECF No. 95, PageID.701, 704).

In sum, it is unfortunate that Plaintiff waited more than three years to have a wheelchair ramp installed; however, Plaintiff has presented no evidence that Defendants denied Plaintiff's request or were in any way responsible for the delay Plaintiff

experienced.    Accordingly, with respect to Plaintiff's reasonable modification claim, the undersigned recommends that Defendants are entitled to summary judgment.

      b.    Mailbox

      At Rivershell Apartments, like so many other apartment complexes, the residents' mailboxes were located outdoors in centralized locations.    (ECF No. 95-28, PageID.741). Plaintiff alleges that the outdoor receptacle assigned to his apartment was positioned in a location that was not wheelchair accessible.    Accordingly, as previously noted, in April 2019, Plaintiff requested that Defendants accommodate his disability by making the mailboxes in question wheelchair accessible.

      During the relevant time period, Defendants had a policy of purchasing and installing personal mailboxes for any resident who requested such.    (ECF No. 95, PageID.701, 743).    On July 16, 2019, Defendants purchased a similar mailbox to install outside the entrance to Plaintiff's residence.    (*Id.*, PageID.704).    Plaintiff, however, refused this accommodation.    (*Id.*).    Why Plaintiff refused this accommodation is not clear.    What is clear, however, is that Plaintiff is not entitled to demand the accommodation of his choosing.

      Under the FHAA, an accommodation is "necessary" where, absent such, a disabled person "likely will be denied an equal opportunity to enjoy the housing of their choice." *Phillips v. Acacia on the Green Condominium Assoc., Inc.*, 2022 WL 1692948 at *2 (6th Cir., May 26, 2022).    But that an accommodation is necessary does not empower Plaintiff with veto authority over a housing provider's proposed solution.    In other

words, Plaintiff was not entitled to the accommodation of his choice but was instead entitled to an accommodation which afforded him equal opportunity to enjoy his apartment.   As the Sixth Circuit observed, "if a housing provider's offered alternative accommodation provides a disabled person with an equal opportunity to use and enjoy his or her dwelling, then the housing provider need not also grant the requested accommodation."   *Id.* at *3.

Plaintiff offers no evidence disputing that Defendants offered to install a mailbox outside the entrance to his residence in July 2019, or that he refused such.[5]   A mailbox was eventually installed outside Plaintiff's residence in June 2022.   (ECF No. 93-2, PageID.469).   Again, the reason for the delay installing a mailbox outside Plaintiff's apartment is unknown.   Plaintiff has failed, however, to present any evidence that Defendants denied Plaintiff's request for accommodation or were in any way responsible for the delay Plaintiff experienced.   Accordingly, with respect to Plaintiff's reasonable accommodation claim, the undersigned recommends that Defendants are entitled to summary judgment.

---

[5] In addition to filing a motion for summary judgment, Defendants filed a Statement of Undisputed Facts.   (ECF No. 98).   Plaintiff responded by filing a Response to Statement of Undisputed Facts.   (ECF No. 105).   Neither of these pleadings, however, constitute evidence that either supports or refutes a motion for summary judgment. Thus, the denial by Plaintiff, in his Response to Statement of Undisputed Facts, that Defendants offered to install a mailbox outside his residence in July 2019, simply fails to advance Plaintiff's position.

5.      42 U.S.C. § 3617

Plaintiff alleges that Defendants unlawfully retaliated against him.   Plaintiff has failed to articulate in his Amended Complaint specifically what actions by Defendants constitute unlawful retaliation.   Nevertheless, from Plaintiff's responses to the present motions, it appears that Plaintiff is alleging the following conduct by Defendants constituted unlawful retaliation: (1) "threatening to evict" Plaintiff; (2) ignoring Plaintiff's complaints regarding "neighbor misbehavior;" (3) selectively applying Rivershell's rules against him; and (4) informing another resident that Plaintiff had submitted a noise complaint against him.

To prevail on a retaliation claim under § 3617, Plaintiff must establish the following: (1) he exercised or enjoyed a right guaranteed by §§ 3603-3606 of the Fair Housing Act; (2) a defendant's intentional conduct constituted coercion, intimidation, threat, or interference; and (3) there exists a causal connection between Plaintiff's exercise or enjoyment of a right and the defendant's conduct.   *Gleason v. Woods Condominium Assoc.*, 2019 WL 2218809 at *7 (E.D. Mich., Mar. 3, 2019).   Plaintiff's claim is analyzed pursuant to the familiar burden-shifting analysis by which Plaintiff must first establish a prima facie case of discrimination.   *Campbell v. Robb*, 162 Fed. Appx. 460, 473 (6th Cir., Jan. 9, 2006).   If Plaintiff makes the requisite showing, Defendants must then offer a legitimate non-discriminatory reason for their conduct.   If Defendants make such a showing, Plaintiff must then demonstrate that the proffered reason is merely a pretext "masking unlawful discrimination."   *Ibid.*

A.      Threatening to Evict

In her rental application, Amethyst Williams indicated that she and Plaintiff owned two "service animals," a Pit Bull and a Rottweiler mix.   (ECF No. 93-5, PageID.484).   On February 23, 2019, Plaintiff sent an email to Defendant Roberts informing her that nobody was to enter his apartment "without consent for any reason when no one is home."   (ECF No. 95-10, PageID.682).   Plaintiff explained that "there are two powerful service animals inside[,] a German Shepherd/Rottweiler mix and a Pitt (sic) Bull.   They will not hesitate to protect their home at all costs as you are viewed as an intruder when I[,] Cedric Carter[,] or Amethyst Williams are not home."   (*Id.*).

The Lease Plaintiff and Amethyst Williams signed clearly provides that "no animals or pets of any kind shall be permitted in the apartment without written consent of the Landlord/Management."   (ECF No. 95-6, PageID.655).   Despite this clear requirement, Plaintiff refused to complete Rivershell's Pet Application or provide other information regarding his dogs.   (ECF No. 95, PageID.675, 687).

Accordingly, on May 28, 2019, Defendant Roberts executed a "Notice to Quit – Termination of Tenancy" to evict Plaintiff and Amethyst Williams from their apartment for violating the lease provision quoted above concerning pets/animals.   (ECF No. 95, PageID.655, 713).   Plaintiff and Amethyst Williams were provided with the Notice to Quit – Termination of Tenancy no later than May 29, 2019.   (ECF No. 95-20, PageID.715).   On May 31, 2019, Plaintiff filed a complaint with the Michigan

-18-

Department of Civil Rights alleging housing discrimination by Rivershell Apartments. (ECF No. 95-21, PageID.719).

Plaintiff alleges that he was "threatened with eviction" in retaliation for filing a complaint with the Michigan Department of Civil Rights alleging housing discrimination.  This claim plainly fails, however, as Plaintiff simply cannot establish the requisite causal connection.  Because Plaintiff was served with the eviction notice *before* Plaintiff filed his civil rights complaint, the latter could not, as a matter of simple logic, have motivated the former.[6]  Accordingly, as to this claim, the undersigned recommends that Defendants' motions for summary judgment be granted.[7]

B.     Ignoring Plaintiff's Complaints

As noted, Plaintiff filed a civil rights complaint in May 2019, alleging housing discrimination by Defendants.  Plaintiff alleges that as retaliation for filing this complaint, Defendants "ignored Plaintiff's valid complaints about neighbor

---

[6] In response to the present motion, Plaintiff speculates that Defendants could possibly have learned, prior to issuing the eviction notice, that Plaintiff was going to file a discrimination complaint.  Plaintiff has had almost two years to conduct discovery and obtain evidence regarding Defendants' knowledge prior to issuing the eviction notice. Having failed to obtain any such evidence, Plaintiff's attempt to avoid summary judgment by reliance on speculation must be rejected.

[7] Subsequent events certainly justified Defendants' actions.  On an unspecified date in May 2019, one of Plaintiff's "service" dogs attacked Plaintiff and Amethyst Williams necessitating that the dog be euthanized.  (ECF No. 95-11, PageID.684-85).  It is not clear precisely when this attack occurred or if such was known to Defendants prior to issuing the eviction notice, however.  Furthermore, a subsequent inspection of Plaintiff's apartment revealed the presence of dog urine and feces so severe that the apartment was deemed "unfit for human occupancy" by the City of Lansing.  (ECF No. 95, PageID.691, 706-11).

misbehavior." Plaintiff has absolutely failed, however, to present any evidence regarding this allegation, choosing instead to simply reiterate legal conclusions and unsupported assertions that there exist "questions of fact."

As discussed above, to survive a motion for summary judgment, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. Plaintiff cannot simply rest on the allegations in his complaint but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Plaintiff has completely failed to satisfy this requirement. Accordingly, the undersigned recommends that as to this claim, Defendants' motions for summary judgment be granted.

C.     Selective Rule Enforcement

Plaintiff alleges that Defendants retaliated against him by engaging in selective enforcement of Rivershell's rules. Again, Plaintiff has failed to present evidence in support of this claim. Accordingly, for the reasons articulated above, the undersigned recommends that, as to this claim, Defendants' motions for summary judgment be granted.

D.     Informing Another Resident of Plaintiff's Complaint

Plaintiff alleges that Defendants retaliated against him by informing another resident that Plaintiff registered a complaint against him or her. Yet again, Plaintiff has failed to present evidence in support of this claim. Accordingly, for the reasons

articulated above, the undersigned recommends that, as to this claim, Defendants'
motions for summary judgment be granted.

      B.    Count II

In Count II, Plaintiff alleges that Defendants violated the Fair Housing Act by
failing to make or allow a reasonable accommodation.   Specifically, Plaintiff alleges that
Defendants failed to build, or permit the building of, a wheelchair ramp and failed to
make a reasonable accommodation to permit him to access his mailbox.   In support of
this claim, Plaintiff cites to 42 U.S.C. § 3604(e)(3)(B).   There is no such provision,
however.   It appears that Plaintiff is attempting to reference 42 U.S.C. § 3604(f)(3)(B),
which, as noted above, merely defines "discrimination" for purposes of claims asserted
under sections 3604(f)(1) and (f)(2).   Thus, Plaintiff's allegations under Count II are
superfluous to the claims asserted under § 3604(f)(2) above.   Accordingly, with respect
to the FHA claims asserted under Count II, the undersigned recommends that
Defendants are entitled to summary judgment.

## III.   State Claims

Plaintiff also asserts several state law claims.   Pursuant to 28 U.S.C. § 1367(c)(3),
the district court may decline to exercise supplemental jurisdiction over a state law claim
if it "has dismissed all claims over which it has original jurisdiction."   Indeed, "if the
federal claims are dismissed before trial. . .the state claims should be dismissed as well."
*Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting
*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Bah v. Attorney*

*General of the State of Tennessee*, 610 Fed. Appx. 547, 555 (6th Cir., May 8, 2015) (same). As discussed above, the undersigned recommends that Defendants' motions for summary judgment be granted as to Plaintiff's federal law claims. Accordingly, the undersigned likewise recommends that the Court decline to exercise jurisdiction over the state law claims asserted in Plaintiff's amended complaint and instead dismiss such without prejudice so that Plaintiff may pursue them in the appropriate state forum.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that Defendants' Motions for Summary Judgment (ECF No. 93, 94) both be granted, Plaintiff's state law claims be dismissed without prejudice, and this action terminated.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: July 10, 2023

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge